# IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION AT KNOXVILLE

FILED

November 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| DEPARTMENT OF | ) | HAMILTON JUVENILE |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Petitioner/Appellee, | ) | NO. 03A01-9705-JV-00152 |
| | ) | |
| v. | ) | HON. SUZANNE BAILEY |
| | ) | JUDGE |
| YVONNE BARDIN, | ) | |
| | ) | |
| Respondent/Appellant | ) | |
| | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| James Richard Bardin | ) | |
| (D.O.B. 1/28/85), | ) | |
| Joshua Isaiah Bardin | ) | |
| (D.O.B. 11/24/86), | ) | |
| Angela Mariah Bardin | ) | |
| (D.O.B. 1/8/88), | ) | |
| Justin Andrew Bardin | ) | |
| (D.O.B. 2/23/91) | ) | AFFIRMED |

Lorraine Raymond, Chattanooga, for Appellant.

John Knox Walkup, Attorney General & Reporter, and Douglas Earl Dimond, Assistant Attorney General, Nashville, for Appellee.

## O P I N I O N

INMAN, Senior Judge

The parental rights of Yvonne Bardin were terminated by the Juvenile Court of Hamilton County and she appeals. Four (4) children are involved. The issue presented for review is whether the evidence is clear and convincing. We find that it is and affirm.

The Tennessee Department of Human Services ["DHS"] became officially involved on May 1, 1991 when it petitioned for the temporary custody of the four children.

On July 17, 1991, the children were placed in the temporary custody of DHS with instructions to conduct a home study of the maternal grandparents. The DHS alleged that Ms. Bardin kept the children [James, Joshua, Angela, Justin, all of whom were under six years of age] "in utter filth and deplorable neglect . . . without running water, electricity, or any basic necessities."

By December 19, 1991 the Juvenile Court had returned the children to their mother.

On September 15, 1993, the DHS again petitioned for and was granted temporary custody of the children as "victims of ongoing physical and medical neglect." The oldest child, James, then eight years old, was hospitalized due to his mother's inattention to his medical needs, but his custody was returned to his mother on November 1, 1993.

In the Spring of 1994, Dr. William Hillner, a psychologist, assessed Ms. Bardin's interaction with her children. [He had previously, in 1993, evaluated her parental competency, with dismal findings.] As a result of his assessment the following year, he found that she did not control their behavior, could not control her anger, assaulted James, was generally dysfunctional and was mildly retarded.

On January 20, 1995, Susan Ford, the caseworker assigned to Ms. Bardin, entered into a plan of reunification of the family. Ms. Bardin agreed to provide better care for the children.

But the matter worsened. Ms. Bardin's public housing apartment was

filthy; she kept dogs in the apartment; the stench sometimes was overpowering; on one occasion the caseworker observed a dead rat on the bathroom floor. Ms. Bardin was evicted from her apartment on September 6, 1995 owing to filthy conditions. James was removed because of bizarre conduct in school and eventually was hospitalized for psychiatric treatment, where he remained at the time of trial.

Ms. Bardin has never married. James' father is James B. Stark. Joshua and Angela were fathered by Percy Connley. Justin's father is unknown. Ms. Bardin was born February 9, 1964; her life has been melancholy beyond description. She suffered a traumatic childhood, being sexually abused first by her father and then by her mother's boyfriend. She and her mother moved constantly, apparently to avoid her father. She eventually settled in Chattanooga, where she was placed in a children's home on two occasions during her teenage years for 'wildness'. On one occasion during these years her mother was admitted to Moccasin Bend Mental Health Center.

Ms. Bardin has difficulty in comprehending her predicament, e.g., she does not understand that the children were twice removed from her care. She works very little: ten weeks in 1995, none in 1994, 1993, 1992 or 1991. Before trial she worked six months. She admitted spending $200.00 per month on 25 dogs, although she has received only $400.00 in total support from the identified fathers of her children during the past five years.

Ms. Bardin testified that she has taken parenting classes, that she loves her children, and that there was never a reason to remove them from her care.

One caseworker testified that "the prospect of the children's returning to her [the mother's] care is so monstrous I personally could not be a part of it."

3

The Juvenile Court, in terminating the parental relationship, made various findings typical of which is that "[Ms. Bardin] put the stinking filth of dogs or other animals ahead of her own children and subjected her own children to that type of unsafe environment repeatedly over the years." Significantly, the Court found by clear and convincing evidence that the conditions which led to the removal of the children persisted over a number of years and were unlikely to be remedied.

The juvenile court is authorized to terminate parental rights if it finds by clear and convincing evidence that the grounds for termination of parental rights have been established, and that the termination is in the best interests of the child. T.C.A. § 36-1-113(c)(1)(2).

A court may terminate parental rights if it finds by clear and convincing evidence that:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore prevent the child's return to the care of the parent(s) or guardian(s), still persist;
>
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and
>
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

T.C.A. § 36-1-113(g)(A)(Repl. 1996). Thus, if the conditions leading to removal have not been cured and are unlikely to be cured in the near future, a court may terminate parental rights in the best interest of the children.

In this case, "the conditions which led to the children's removal" were, in

1991, "utter filth and deplorable neglect," and in 1993, "ongoing physical and medical neglect" due in part to "unsanitary and unsafe" housekeeping. Moreover, James was removed in 1993 because of Ms. Bardin's neglect of his medical needs and again in 1995 because of filthy housekeeping.

Ms. Bardin did nothing to alleviate those conditions or make it likely they would soon be remedied. Her housekeeping remained execrable as ever. Caseworkers testified about the filth, the numerous animals and the repellant odors. Four days before trial, Ms. Bardin refused to allow caseworker Summerlin in the front door because of the condition of her home. What areas Ms. Summerlin could see were heaped with trash.

Ms. Bardin's neglect of James and his medical condition continued; she visited him only twelve times in the two years before trial. She continued to subordinate the children's needs to her own desires as exemplified by the money she spent on her dogs compared to the money she spent on her children. She continued to deny that she had any problems and testified that all her houses had been clean and that she did not believe there was ever a reason for her children to be removed. We agree that this massive denial indicates that Ms. Bardin was unlikely to remedy her problems in the near future; if she refused to recognize her problems, she could not cure them.

Given these circumstances and given the children's own problems, the Juvenile Court expressed fear for the safety of the children and determined that termination was in the children's best interest.

The appellant argues that the caseworkers' testimony revealed that her parenting skills showed gradual improvement. We do not read their testimony in this light. Both caseworkers testified they saw no improvement. Her

5

argument that the court really based its decision on her failure to pay child support likewise is unmeritorious; the court merely pointed to that behavior as an example of appellant's attitude towards her children. Alternatively, she argues that her 'marginal' housekeeping and keeping of dogs were the predicate of the court's decision and that these factors do not warrant the drastic action of terminating her parental rights.

The testimony of the witnesses about the deplorable and unhealthy conditions of the home was unrefuted. These conditions persisted for years, with no indication that they would ever be corrected.

The trial court found that the appellant was dishonest and uncooperative and that the evidence was clear and convincing that the best interests of the children required that the parental rights of the appellant be terminated.

Parents have a fundamental right to the care, custody and control of their children. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination and under the applicable statute. Santowsky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re: Drinnon, 776 S.W.2d at 97 (Tenn. App. 1988); Tennessee Department of Human Services v. Riley, 689 S.W.2d 164 (Tenn. App. 1984). All issues are premised on the foundation of "what is in the best interest of the child." Riley at 169.

Ms. Bardin's children were removed due to health and safety risks posed to them by their filthy surroundings and her inattention to their basic needs, including medical needs. Ms. Bardin denied she had any problems and maintained a deplorable and dangerous household for five years up until trial.

6

She agreed in her plans of care to provide a clean and healthy living environment  but her residence remained filthy, malodorous and filled with animals and their smell.

She argues that she now has a job and "will do better."  But the execrable conditions persisted for five years; her oldest child remains hospitalized for psychiatric problems; the trial court found her to be dishonest and unworthy of belief.

Our review of the findings of fact made by the trial court is <u>de novo</u> upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.  TENN. R. APP. P., RULE 13(d).   We agree with the trial judge that the evidence is clear and convincing, and the judgment is affirmed at the costs of the appellant.


_____
William H. Inman, Senior Judge

CONCUR:


_____
Herschel P. Franks, Judge


_____
Charles D. Susano, Jr., Judge